**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| VALERIE SUCICH,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES INC.,<br><br>Defendant. | CAUSE NO.: 2:18-CV-356-TLS |

**OPINION AND ORDER**

Plaintiff Valerie Sucich slipped and fell on a puddle of shampoo or conditioner as she was walking down an aisle in the Health and Beauty Department at Defendant Wal-Mart Stores Inc.'s Merrillville, Indiana location in July 2016. She filed the Complaint [ECF No. 1] in this lawsuit, alleging a premises liability claim against the Defendant. This Court has jurisdiction based on diversity of citizenship. The case is now before the Court on the Defendant's Motion for Summary Judgment [ECF No. 82] filed on July 24, 2026, which is fully briefed. ECF Nos. 82–86, 89–93, 96. Because there is a genuine dispute of material fact regarding the Defendant's constructive knowledge of the spill, the Court denies the Motion for Summary Judgment.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016)

(citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## MATERIAL FACTS[1]

The Plaintiff Valerie Sucich was shopping at the Walmart in Merrillville, Indiana, on July 23, 2016, when she slipped and fell on a slippery substance on the floor—either conditioner or shampoo—in the shampoo aisle. Ex. D, 145:5–7, 147:12–14, 152:24–153:8, ECF No. 83-4; Ex. K (photos of substance on the ground), ECF No. 83-10; Ex. U (Walmart Claim Report), ECF No. 91-9. Her two daughters were near her when she fell. Ex. D, 145:8–10, 148:12–17, 153:15–24; Ex. F, 24:4–14, ECF No. 83-6. The Plaintiff did not see what she slipped on before she fell. Ex. D, 153:3–11, 159:6–160:1, 169:12–18. The Plaintiff testified that it was a "pretty big puddle" that blended in with the floor and that the substance on the floor is what caused her to slip. *Id.* 158:4–12, 161:2–4, 169:1–11. Neither the Plaintiff nor her daughters knows how long the substance was on the floor or whether the Defendant had any notice of the substance being on

[1] The Defendant labeled its exhibits A–L, and the Plaintiff labeled her exhibits M–V. The Court includes those facts offered by the parties that are supported by a citation to the record. The Defendant did not file a reply to the Plaintiff's Statement of Additional Material Facts as provided for in Northern District of Indiana Local Rule 56-1(c)(2).

the floor prior to her fall. *Id.* 157:17–158:3, 161:7–10, 176:10–13, 190:18–191:3; Ex. E, 24:19–24, 25:12–24, ECF No. 83-5; Ex. F, 28:23–29:24.

The Health and Beauty Department was one of the top ten busiest departments at the store, depending on the day and month. Ex. R, 28:20–29:15, ECF No. 91-6. Saturday mornings in the summer are typically a busier time. *Id.* 20:24–21:3. The store manager, who was the Defendant's Rule 30(b)(6) witness, described the department as "high traffic, medium risk" and agreed that spills on the floor can create a hazard. Ex. M, 40:8–15, 43:11–12, ECF No. 91-1; Def. Br. 6, ECF No. 84 (identifying Rachel Brown as the Defendant's Rule 30(b)(6) witness).

The Defendant has a written standard operating procedure (SOP) titled "Safety Sweeps" directing employees to "periodically [walk] a department or area, checking the conditions for safety and cleanliness, and providing a quick clean." Ex. M, 21:15–21; Ex. P, ECF No. 91-4 (SOP 211). The safety sweeps SOP directs employees to "[l]ook for potential hazards such as . . . spills," to "clean up any . . . spills," and to "[m]ake sure all potential hazards are eliminated." Ex. P, p. 1. The purpose of a safety sweep is to allow the Defendant to discover hazards and timely clean them up. Ex. M, 43:17–44:4. The safety sweep procedure does not state the frequency at which the sweeps should occur. *Id.* 21:22–22:1; Ex. P; Ex. Q, 17:20–18:8, ECF No. 91-5. Employees testified that safety sweeps are performed "as needed." Ex. M, 22:2–23; Ex. Q, 18:3–8. This is dependent on the time of day, the time of year, and the area; if an employee notices that there are more items on the floor due to customer traffic, the employee would do a safety sweep of the area more frequently. Ex. M, 22:8–15. The Defendant's store manager testified that the Defendant knows spills on the floor can create a hazard and that customers should be able to expect the Defendant is performing the safety sweeps. *Id.* 42:10–13, 43:11–12.

The store manager testified that the Defendant has no knowledge as to whether a safety sweep was performed at any time prior to the Plaintiff's fall because the Defendant does not keep documentation on safety sweeps. Ex. M, 23:5–11. There is no statement from any associate saying that a safety sweep had been done. *Id.* 24:3–6. The department manager of the Health and Beauty Section in 2016 testified that she does not know if the Defendant's safety sweeps SOP was followed that day. Ex. R, 43:23–44:6.

The record contains six photos taken by the Defendant after the Plaintiff's fall of the aisle where the Plaintiff fell that show a puddle of a white substance around an open bottle and several bottles on the floor. Ex. K. The Plaintiff also produced three photos taken after the fall by one of her daughters at her request while she was still in the wheelchair the Defendant had provided for her at the site of the fall. *See* Ex. L, ECF No. 83-11; Ex. T, 163:19–165:2, ECF No. 91-8.

The Defendant produced one video of the Plaintiff's fall. *See* Ex. G, ECF Nos. 85, 86. The video lasts two hours and ten minutes. *Id.* The video camera is positioned over the bottom end of a middle aisle with a full view of that middle aisle but also a partial view of an aisle to the left (where the Plaintiff fell) and a partial view of an aisle to the right. The angle of the video shows approximately the top half of the length of the left aisle, the top portion of some of the shelves on the left side of the left aisle, and about halfway down the height of the aisle; the floor of the left aisle cannot be seen. *Id.*; Ex. I, 38:18–21, ECF No. 83-8.

The video first shows sixty minutes before the Plaintiff's fall. *Id.* In that hour, no bottle is seen falling off a shelf. Ex. G. Also, no employee is seen in the left aisle in the hour before the Plaintiff's fall. *Id.* In the same period, customers are visible moving through the left aisle where the Plaintiff's fall occurred. *Id.* The Plaintiff identifies three people who pass through the left

aisle prior to when she fell whose conduct she contends indicates the spilled shampoo or conditioner was already on the floor.

First, at 12:33:19 p.m., a woman is observed entering the left aisle from the top of the frame and passing through the area where the Plaintiff fell. Ex. G. The woman, who is pushing a cart, walks through the area, and at 12:33:24 p.m. stops and appears to look down and then continues walking. *Id.*

Second, at 12:33:48 p.m., another woman is observed walking up the left aisle from the bottom of the frame and, after walking through the area where the Plaintiff fell, at 12:33:49 p.m., makes an abrupt motion and looks down. *Id.* The woman spends the next several seconds stationary and appearing to speak with someone, continuing to look back at the ground and the area she walked through. *Id.*

Third, at 12:36:41 p.m., a woman enters the left aisle from the top of the frame and at 12:36:44 p.m. bends over and reaches out across the aisle at the location where the Plaintiff fell, as though she is reaching across something below her, to take an item from the shelf. *Id.*

As for the Defendant's employees seen in the video prior to the Plaintiff's fall, employee Jill Walsh enters the right aisle from the top of the frame at 11:57:19 a.m. and proceeds out of the bottom of the frame from the same aisle at 11:57:31 a.m. *Id.* She then reappears in the bottom of the frame in the middle aisle at 11:57:52 a.m. She spends the next ten seconds organizing product on a shelf in the middle aisle and leaves the bottom of the frame from the middle aisle at 11:58:05 a.m. Between the time Walsh left the middle aisle and almost an hour later at 12:51:02 p.m. when the Plaintiff fell in the left aisle, no employee is visible in any of the part of the three aisles in the video footage. *Id.*; Ex. I, 25:4–19. Walsh testified that she did not conduct a safety sweep of the left aisle where the Plaintiff fell and has no information about whether any other

employee performed a safety sweep of that aisle. Ex. S, 5:19–6:2, 20:1–16, ECF No. 91-7. The store manager testified that an employee could have been walking in an adjacent department and visually verified there was nothing to pick up in the aisle where the Plaintiff slipped. Ex. H, 23:5–23, ECF No. 83-7. There is no testimony of record that such a safety sweep occurred.

At 12:51:01 p.m., the Plaintiff enters the video from the top left of the frame, proceeds into the left aisle, and, at 12:51:02 p.m., falls. Ex. G. The viewer cannot see the lower portion of the Plaintiff's body. *Id.* The viewer can see the Plaintiff enter the left aisle, move to her right, fall, get back up, look down, and then wait for a store associate. *Id.* The viewer cannot see what happened at the Plaintiff's feet. *Id.* After the fall, the Plaintiff's daughters leave the aisle, and a store employee enters the frame at the top left at approximately 12:51:45 p.m.

Based on the camera layout schematic for this store, up to six other cameras could have captured an employee along the back aisleway that is not depicted in the video offered in evidence. Ex. M, 24:15–25:14; Ex. N, ECF No. 91-2.

The Defendant prepared a post-incident report indicating that employee Andrea Pickett observed the surface of the floor was not clean, the surface of the floor was not dry, there was a shampoo spill, and the Plaintiff alleged she slipped and fell in the spill. Ex. U.

As a result of the slip and fall, the Plaintiff sustained injuries to her right shoulder, both knees, right hip, and lumbar region; has undergone nine surgical procedures; incurred over $761,000.00 in medical expenses to date; needs ongoing medical care, including a projected future hip replacement revision; and has not worked since the fall. Pl. Stmt. Add'l Mat. Facts ¶ 41, ECF No. 91.

**ANALYSIS**

Moving for summary judgment, the Defendant argues the Plaintiff cannot show that the Defendant knew or should have known about the condition of the floor in the shampoo aisle where the Plaintiff fell. "Because this case is before [the Court] under diversity jurisdiction, state substantive law applies—here, that of [Indiana]." *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 570 (7th Cir. 2022) (citation omitted). Indiana law requires that a plaintiff bringing a negligence claim prove "three elements: 1) duty owed to plaintiff by the defendant; 2) breach of duty by allowing conduct to fall below the applicable standard of care; and 3) compensable injury proximately caused by defendant's breach of duty." *Ryan v. TCI Architects/Eng'rs/ Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017) (citation omitted).

The Defendant does not dispute that it owed the Plaintiff, a business invitee on its property, a duty to exercise reasonable care for her protection. *See Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991) (describing duties owed by landowner); *Douglass v. Irvin*, 549 N.E.2d 368, 369 (Ind. 1990) (recognizing the common law duty of a landowner to maintain its property in a reasonably safe condition for business invitees). Under this reasonable care standard, the Defendant is

> subject to liability for physical harm caused to [its] invitees by a condition on the land if, but only if, [it]
>
> (a) knows *or by the exercise of reasonable care would discover the condition*, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell*, 569 N.E.2d at 639–40 (emphasis added) (quoting Restatement (Second) of Torts § 343 (1965)); *see Griffin v. Menard, Inc.*, 175 N.E.3d 811, 813 (Ind. 2021) (quoting *Burrell*, 569 N.E.2d at 639–40).

Rather, the Defendant seeks summary judgment on the breach of duty element. "Allowing the existence of a hazardous substance on the floor of a business can be a breach of the duty to exercise reasonable care." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1088 (7th Cir. 2018) (citing *Barsz v. Max Shapiro, Inc.*, 600 N.E.2d 151, 153 (Ind. Ct. App. 1992)). But, "[a]n invitor is not the insurer of the invitee's safety, and before liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger." *Gasser Chair Co. v. Nordengreen*, 991 N.E.2d 122, 126 (Ind. Ct. App. 2013) (citing *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012)). The parties agree that there is no evidence that the Defendant had actual knowledge of the spilled substance prior to the Plaintiff's fall.

Thus, the question is whether the Plaintiff can show that the Defendant had constructive knowledge of the dangerous condition—the spilled shampoo or conditioner on the floor—prior to the Plaintiff's fall. "There is constructive knowledge when a condition has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the invitor had used *ordinary care*." *Id.* at 126–27 (emphasis added) (citing *Schulz*, 963 N.E.2d at 1144). "Whether a particular act or omission is a breach of duty is generally a question of fact for the jury. It can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts." *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003) (cleaned up); *see Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 473 (7th Cir. 1988) ("Moreover, summary judgment is rarely appropriate in negligence cases due to the multitude of factual issues which need to be resolved by the jury.").

The Court finds that the Plaintiff has offered sufficient evidence to create a genuine dispute of material fact for trial that the spilled shampoo or conditioner was on the floor in the shampoo aisle for a sufficient length of time such that the Defendant should have discovered and removed the spill through ordinary care prior to the Plaintiff entering the aisle. The Defendant first contends that there is no evidence even to show there was a spill prior to the Plaintiff's fall. This is incorrect. The Plaintiff testified that the puddle of shampoo or conditioner on the floor caused her to fall. And the post-fall photographs depict the puddle of shampoo or conditioner on the floor where she fell. The issue becomes how long the spilled shampoo or conditioner was on the floor before the Plaintiff fell.

The Plaintiff has presented evidence of the Defendant's written safety sweeps SOP that requires employees to "periodically [walk] a department or area, checking the conditions for safety and cleanliness, and providing a quick clean," which includes looking for and cleaning up hazards such as the spilled shampoo or conditioner that caused the Plaintiff to slip. Yet no employee of the Defendant, including the store manager, the Health and Beauty Department manager, or the employees of the department, knows if any safety sweep was done of that aisle prior to the Plaintiff's fall. The Health and Beauty Department is one of the busiest departments in the store, especially on a Saturday in July, such that safety sweeps for hazardous conditions should be done with more frequency. And although the video does not depict the entire left aisle, the video does not depict any employee doing a safety sweep of any of the three aisles depicted in the video during the hour before the Plaintiff's fall. There is no evidence that the Defendant followed its SOP.

As the Defendant notes, the store manager and Rule 30(b)(6) witness testified that the available video surveillance did not show the entirety of the aisle but that a store employee

would have been able to observe the area of the Plaintiff's fall from the rear aisle. The Defendant then suggests the proper inference is that a safety sweep was done and no spill was observed. But an equally reasonable inference, given the testimony that there is no knowledge that any safety sweeps had been done that morning, is that no safety sweeps were done from the rear of the aisle and therefore the spill was not observed.

The Plaintiff notes that the video of the area produced by the Defendant does not show a bottle falling from the shelf in the hour prior to the Plaintiff's fall, which the Plaintiff argues is evidence that the bottle was on the ground for at least an hour. The Plaintiff reasons that the video not showing any employee conducting a safety sweep of any of the three aisles in the hour prior to the Plaintiff's fall supports the inference. And, as argued by the Plaintiff, the same video footage shows three customers who walked through the area where the Plaintiff fell and exhibited behavior that could be reasonably interpreted by a jury as reacting to the spilled substance on the floor. One woman walks through the area, stops, appears to look down, and then continues walking. A second woman walks through the area, makes an abrupt motion, looks down, spends several seconds stationary while speaking to someone and looking at the ground and the area she walked through. A third woman bends down and reaches out across the aisle, as though she is reaching across something. These three customers passed through the area approximately twenty minutes prior to the Plaintiff.

The Defendant had a duty of reasonable care to make some inspections at intervals called for by the conditions at the store—namely the busy foot traffic in the Health and Beauty Department on a Saturday morning in July. "While there is no bright line for determining how much time demonstrates a lack of ordinary care, periods of less than fifteen minutes have generally been held to be insufficient." *Isaac v. Wal-Mart*, No. 1:18-CV-333, 2020 WL 704588,

at *3 (N.D. Ind. Feb. 12, 2020) (citing *Robinson v. Kroger*, No. 1:13-CV-605, 2014 WL 3405874, at *4 (S.D. Ind. July 10, 2014) (finding no issue of fact on constructive knowledge where the foreign substance that caused the plaintiff's fall was found to be present less than ten minutes); *Williams v. Meijer, Inc.*, No. 1:12-CV-510, 2013 WL 3246981, at *3 (S.D. Ind. June 18, 2013) (finding no issue of fact on constructive knowledge where the area had been inspected seven to twelve minutes before the plaintiff's fall)); *see Schulz*, 963 N.E.2d at 1144–45 (finding no issue of fact on constructive knowledge where the liquid had been in place less than ten minutes).[2] Here, there is evidence from which a trier of fact could infer that the spilled shampoo or conditioner was on the floor for at least twenty minutes, if not an hour, prior to the Plaintiff's fall. This is sufficient to survive summary judgment.

The Defendant argues that any such conclusions are speculation or conjecture. Like the court in *Isaac*, the Court disagrees. The reasonable inference described above can be drawn from the circumstantial evidence in the record, which can create a genuine dispute of fact for trial. *See Isaac*, 2020 WL 704588, at *4. For example, the Defendant argues that the flow of customers through the aisle where the Plaintiff fell does not establish how long the puddle of shampoo or conditioner was on the ground. But this is only one inference that can be drawn from the video; another inference favorable to the Plaintiff can be drawn from the three customers who exhibited behavior consistent with a spill on the floor.

[2] The Defendant cites *Gasser* to suggest that a daily inspection is sufficient. *See* 991 N.E.2d at 127. *Gasser* is readily distinguishable based on the nature of the hazard, which was the gas cylinder of a chair that failed at a casino where the chairs were inspected daily. Similarly, two other cases cited by the Defendant are distinguishable because there was no reason in either case that the landowner would have reason to inspect for the defect. *See Wellington Green Homeowners' Ass'n v. Parsons*, 768 N.E.2d 923, 927–29 (Ind. Ct. App. 2002) (finding the plaintiff failed to prove that the defendants had actual or constructive knowledge of the defectively attached community mailbox unit and there was no evidence that the defect would have been discovered by an inspection); *Cergnul v. Heritage Inn of Ind., Inc.*, 785 N.E.2d 328, 333 (Ind. Ct. App. 2003) (finding "no evidence was presented that [the defendant] possessed either actual or constructive knowledge that there may have been a problem with the [stairway] railing").

The Defendant also reasons that there is no evidence that a safety sweep was *not* performed. But given the deposition testimony—of the store manager who is also the Defendant's Rule 30(b)(6) witness, the department manager, and employees who worked that morning—that they are not aware of any safety sweeps performed that morning, it is a reasonable inference that no safety sweep was performed. While the Defendant notes that the store did not receive any reports of a substance on the floor prior to the Plaintiff's fall, that goes only to the Defendant's actual knowledge of the spill, which is not at issue.

The Defendant further argues that it is speculation that a safety sweep would be sufficient to prevent a slip. This argument is disingenuous given the Defendant's own written safety sweeps SOP, which dictates that employees keep their areas clean of hazards, including picking up and cleaning things on the floor. It is a reasonable inference that, if an employee had done a safety sweep, the employee would have seen the bottle and the spill on the floor, and the employee would have cleaned up the spill.

Finally, the Defendant contends the Indiana Supreme Court held that evidence regarding store protocols could not, as a matter of law, create an issue of material fact regarding constructive notice. The Defendant overapplies the holding in *Griffin*, 175 N.E.3d at 814, which did not establish a categorical rule but found that, given the specific facts of the case—including that no store protocols had been produced in discovery, the dangerous condition of the staples in the bottom of a box failing and causing a sink to fall on the plaintiff was "not readily apparent," there were no videos, and there was no indication or evidence that Menard's should have noticed the defective condition of the box—the court declined to impose a duty on a landowner to have certain policies, conduct certain inspections, or keep records of the same. *Id.* Nevertheless, the court also "reject[ed] any implication that a premises owner may avoid an inference of

constructive notice by failing to enact or follow safety policies." *Id.* In this case, the dangerous condition of a puddle of shampoo or conditioner on the floor would have been "readily apparent" by "visual inspection" during a routine safety sweep of a busy department at a busy time of day—one of the Defendant's standard operating procedures. Unlike in *Griffin*, the Plaintiff has included a copy of that written policy and video footage depicts the event in question.

Similarly, the Defendant's citation to *Austin v. Walgreen Company* for the holding that there was no evidence that Walgreen employees had notice of water on the floor prior to the plaintiff's fall is not persuasive. In *Austin*, the plaintiff slipped and fell near the register at a Walgreens. 885 F.3d at 1087. She did not see anything on the floor that would have caused the fall, although she "assumes" she slipped on water, and those who came to help did not see anything on the floor. *Id.* Finding no constructive knowledge, the court noted that the plaintiff had presented no evidence of how long any alleged hazard was present on the floor, and the court found that the plaintiff's statement that she stepped on "something" and a post-fall photo of water several minutes after the fall were not sufficient "to establish how long the hazard was on the floor before [the plaintiff] encountered it." *Id.* at 1088. In contrast, the Plaintiff in this case testified that she slipped on the spilled shampoo or conditioner; her daughters and an employee observed the spilled shampoo or conditioner and took photographs after the fall; it is reasonable to infer that the Defendant's safety sweeps standard operating procedure was not followed; and based on the video evidence, it is reasonable to infer that the spilled shampoo or conditioner was on the floor for at least twenty minutes if not at least an hour before the fall.

A reasonable jury could conclude that, had the Defendant conducted safety sweeps at a reasonable interval, which was at least twenty minutes before the Plaintiff's fall, given the busy foot traffic in the Health and Beauty Department on a Saturday morning in July, the Defendant

would have discovered the spilled substance. Because there is a genuine dispute of material fact regarding whether the Defendant breached its duty of reasonable care based on its constructive knowledge of the spill, the Court denies the motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion for Summary Judgment [ECF No. 82] and DENIES the Plaintiff's request for oral argument [ECF No. 93].

Pursuant to 28 U.S.C. § 636, the Court REFERS this case to Magistrate Judge John E. Martin for the purpose of holding a settlement conference.

SO ORDERED on November 4, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT